IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| RUBEN SIFUENTES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. |
| v. | ) |
| | ) |
| RUSHMORE LOAN MANAGEMENT | ) |
| SERVICES, LLC, and SAFEGUARD | ) |
| PROPERTIES MANAGEMENT, LLC, | ) |
| | ) JURY DEMANDED |
| Defendants. | ) |

## COMPLAINT

Plaintiff Ruben Sifuentes seeks relief for the unfair and deceptive practices of Defendants Rushmore Loan Management Services, LLC ("Rushmore") and Safeguard Properties Management, LLC ("Safeguard"). Rushmore did not yet possess a court order confirming any judicial sale in foreclosure. Nonetheless, Rushmore, in its servicing of the Plaintiff's mortgage, used Safeguard to lock Plaintiff out of his home, prematurely claiming its rights to enforce the mortgagee's security interest granted by the mortgage on the Plaintiff's home. Even after Plaintiff advised Rushmore (through its counsel) that he had not abandoned his home and continued to live there while he defended the foreclosure and sought loss mitigation, Rushmore used Safeguard to lock Plaintiff out of his home a second time. Defendants' conduct dispossessed Plaintiff from his home, constituted an improper disablement of Plaintiff's use and enjoyment of the property, resulted in the loss of Plaintiff's valuable and sentimental personal property, and amounts to common law trespass.

### *Parties*

1. Plaintiff Ruben Sifuentes is a resident of Cook County, Illinois. At all relevant times, Plaintiff resided at 3627 N. Saint Louis Avenue, Chicago, Illinois 60618.

2. Defendant Rushmore Loan Management Services, LLC is a Delaware LLC, with a principal office located at 15480 Laguna Canyon Road, Suite 100, Irvine, California 92618. Rushmore has a registered agent in the State of Illinois and routinely collects on mortgage debts in this district.

3. Rushmore began servicing the Plaintiff's mortgage loan in February of 2016, after Plaintiff had difficulty keeping up with his mortgage payments and the loan was declared in default.

4. Defendant Safeguard Properties Management, LLC ("Safeguard") is a Delaware LLC with a principal office located at 7887 Safeguard Circle, Valley View, Ohio 44125. Safeguard has a registered agent in the State of Illinois and routinely conducts property inspection, lock-out, and alleged "preservation" services – by itself and through a network of contracted agents – for mortgage lenders and servicers in this district.

5. According to its website, Safeguard is "a turnkey resource for multiple aspects of default property preservation" and "the largest mortgage field service company in the industry." Safeguard is hired to perform property services on mortgaged homes in which the lender or servicer seeks to enforce its security interest in the property upon the homeowner's default or threat of default.

6. Rushmore utilized Safeguard's property services for the Plaintiff's home on multiple occasions, including but not limited to May 26, 2016 and July 7, 2016, and Rushmore added "PROP PRESERVATION" fees to the Plaintiff's mortgage account.

### Jurisdiction and Venue

7. Because Plaintiff alleges claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), this Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) since the activities giving rise to Plaintiff's cause of action occurred in this district and both Defendants regularly conduct business here.

### *Factual Allegations Common to All Counts*

9. On or about July 6, 2012, a foreclosure complaint was filed against Plaintiff in the Circuit Court of Cook County, Chancery Division, and assigned Case No. 2012 CH 25200.

10. Plaintiff was trying to save his home from foreclosure and, on or about January 1, 2016, he applied for a HAMP loan modification with his then loan servicer, JP Morgan Chase Bank, N.A.

11. JP Morgan Chase Bank, N.A. acknowledged receipt of the loan modification application and requested additional documentation, which Plaintiff provided.

12. After Plaintiff's supplemental HAMP submission, JP Morgan Chase Bank, N.A. advised that Plaintiff's mortgage servicing would be transferred to Rushmore, effective February 1, 2016.

13. According to Section 3.4.1 of the Making Home Affordable Program Handbook for Services, "[w]hen a borrower is simultaneously in foreclosure and is either being evaluated for HAMP or is in a TPP [trial payment plan], the servicer must provide borrower with a written notification that explains, in clear language, the concurrent modification and foreclosure processes and states that **even though certain foreclosure activities may continue, the home will not be sold at a foreclosure sale while the borrower is being considered for HAMP** or while the borrower is making payments under a TPP…" (emphasis added).

14. On or about February 18, 2016, with a HAMP request pending, Plaintiff moved to stay the judicial sale of his property.

15. Accordingly, and upon Plaintiff's motion, the foreclosure court stayed the sale.

3

16. On or about May 9, 2016, the sale was stayed again and the foreclosure case was set for further status on June 22, 2016.

17. However, on or about May 26, 2016, Plaintiff returned home from work to discover that he could not enter his home.

18. The lock to the front door had been changed and Plaintiff's key did not work.

19. He went through the alley to try and enter his property through the back door and noticed that the back door was ajar.

20. When he was finally able to enter his home through the back, Plaintiff saw a notice instructing him to call Safeguard on his kitchen counter.

21. The notice admitted that a door lock had been changed but that, upon entry into the home, "it was determined the property was occupied." Therefore, no additional property work was performed.

22. However, Plaintiff took photographs to demonstrate that his home had been left in a state of disarray. Drawers and cabinets were opened and picked through and multiple items of valuable personal property were missing, including cuff links from a sizeable collection, business suiting, and jewelry. There were also items taken from the Plaintiff's back yard including patio furniture and a small fire pit.

23. Plaintiff went to the police station to report the incident and his foreclosure counsel advised the court and Plaintiff's mortgage servicer's counsel that Plaintiff continued to reside at the property and had no intention of abandoning the property.

24. On or about June 22, 2016, the foreclosure sale was stayed again and the case was continued to August 4, 2016.

25. Nonetheless, on or about July 7, 2016, Defendants entered Plaintiff's home again.

26. When Plaintiff arrived home, the front door lock had been changed for a second time and a lockbox had been installed.

27. The basement back door to the Plaintiff's home looked as if it had been pried open with a crowbar, evidencing signs of forced entry.

28. After Plaintiff was given the lockbox code by his foreclosure counsel – who received it from Rushmore's counsel – he entered the home to find that more items were missing, including a winter jacket and a chainsaw. The front hall closet was open and Plaintiff's bedroom was in disarray.

29. The foreclosure court had not authorized these break-ins and Plaintiff continued to defend the foreclosure proceeding as no final and appealable judgment of foreclosure had yet been entered.

30. At no time had Plaintiff vacated or abandoned his home.

## COUNT I
### *Violations of the Fair Debt Collection Practices Act ("FDCPA")*
### *15 U.S.C. § 1692f(6)*

31. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1-30 as if set forth fully in this Count.

32. Plaintiff Ruben Sifuentes is a "consumer," as that term is defined by § 1692a(3) of the FDCPA, in that he was allegedly obligated to pay a residential mortgage debt.

33. Defendant Rushmore acts as a "debt collector," as that term is defined in § 1692a(6) of the FDCPA, because it began servicing Plaintiff's mortgage, in an effort to collect a delinquent mortgage debt, after the loan had already been declared in default.

34. Defendant Safeguard is also subject to the provisions of the FDCPA because, under § 1692f(6), the definition of "debt collector" is expanded for purposes of § 1692f(6) to include any

5

person who uses any instrumentality of interstate commerce or the mails in any business, the principal purpose of which is the enforcement of security interests.

35. Defendant Safeguard's principal business is to enforce mortgage servicer security interests – in this case, the mortgage debt that Rushmore was seeking to collect from Plaintiff – by marketing itself to mortgage servicers and stating, "As a first line of defense, timely and accurate property inspections provide critical information about the condition and occupancy status of a property so that steps can be taken to secure and protect it. Through early detection when issues and damages occur, properties sustain fewer and less severe damages, saving money and protecting their condition and value." http://www.safeguardproperties.com/Services/Property_Inspections.aspx.

36. When loans are delinquent, Safeguard will send HUD Occupancy mailers, and attempt to contact delinquent borrowers on behalf of mortgage lenders and servicers. http://www.safeguardproperties.com/Services/Property_Inspections/HUD_Occupancy_Mailers.aspx.

37. When loans are delinquent, Safeguard will also "secure" the mortgaged property and states, "During both pre- and post-foreclosure securing, properties receive regular inspections to identify damages and debris. In cold climates, plumbing will be winterized. All results are documented with photos and written reports, then submitted to the client." http://www.safeguardproperties.com/Services/Property_Preservation/Securing.aspx.

38. Safeguard performed exterior and interior occupancy checks and inspections and changed locks on the Plaintiff's home during the course of Defendants' efforts to collect an alleged delinquent mortgage debt in foreclosure.

39. Safeguard's services were charged to Plaintiff's alleged delinquent mortgage debt account. In Rushmore's mortgage statements to Plaintiff, the alleged mortgage debt was increased to include property "preservation" fees assessed for Safeguard's visits to the property.

40. Pursuant to § 1692f(6), taking or threatening to take any nonjudicial action to affect dispossession or disablement of property is strictly prohibited if:

    (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

    (B) there is no present intention to take possession of the property; or

    (C) the property is exempt by law from such dispossession or disablement.

41. Rushmore and Safeguard acted to enforce the security interest created by the mortgage on the Plaintiff's home by ordering and performing various entries and inspections to the home, including but not limited to those conducted on May 26, 2016 and July 7, 2016.

42. Rushmore and Safeguard took non-judicial action to effectuate the dispossession and disablement of Plaintiff's property (by, among other things, changing the front door lock on May 26, 2016 and July 7, 2016) to collect the alleged debt owed to Rushmore.

43. However, there was no present right to take possession or effectuate the dispossession and disablement of the Plaintiff's home because Plaintiff was defending the foreclosure, the property was not vacant, abandoned or in disrepair, and there was no valid court order confirming sale or a final and appealable judgment of foreclosure. "Except as provided in subsection (d) of Section 15-1501 [735 ILCS 5/15-1501], the interest in the mortgaged real estate of (i) all persons made a party in such foreclosure and (ii) all nonrecord claimants given notice in accordance with paragraph (2) of subsection (c) of Section 15-1502 [735 ILCS 5/15-1502], shall be terminated by the judicial sale of the real estate, pursuant to a judgment of foreclosure, <u>provided the sale is confirmed in accordance with this Article</u>." 735 ILCS 5/15-1404 (emphasis added).

44. Defendants had no present right to enter the interior of Plaintiff's property – as required for the mortgage lender or its agent to be permitted to so inspect – according to the terms of the mortgage itself. Moreover, even if an interior inspection was permissible, the lender must specify a <u>reasonable</u> cause for so inspecting.

45. Defendants violated the FDCPA by entering Plaintiff's property on multiple occasions, without authorization, and when such entries were not permitted by law or by contract, by removing his personal property, by changing the front door lock and then, on another visit, by placing a lockbox on the property (thereby rendering Plaintiff's front door house key inoperable and disabling his entry).

46. Defendants' conduct was outrageous, especially because it did not stop after Safeguard's first unlawful entry, when Safeguard admitted the property was occupied and it should not have entered. Instead of remedying its first admittedly improper entry, Safeguard went ahead and changed the front door lock again and cleared out additional personal effects.

47. Plaintiff lost valuable personal property, experienced undue anxiety, stress, aggravation and felt violated after being locked out and vandalized.

WHEREFORE, Plaintiff asks that this Court enter judgment in his favor and against Defendants Rushmore Loan Management Services, LLC and Safeguard Properties Management, LLC and award damages as follows:

(A) Actual and statutory damages under the FDCPA, 15 U.S.C. § 1692k;

(B) Reasonable attorney's fees, litigation expenses and costs incurred in bringing this action; and

(C) Any other relief this Court deems appropriate and just under the circumstances.

## COUNT II
### *Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")*

48. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1-30 as if set forth fully in this Count.

49. Plaintiff is a "consumer," as that term is defined under 815 ILCS 505/1, in that he contracted for the purchase of a real estate, which purchase was secured by a note and mortgage eventually assigned for servicing to Defendant Rushmore.

50. 815 ILCS 505/2 protects consumers against deceptive <u>or</u> unfair acts.

51. An act is deemed "unfair" for purposes of 815 ILCS 505/2 if it violates Illinois public policy, and amounts to immoral, unethical, or unscrupulous conduct.

52. Rushmore's order to enter the Plaintiff's home and change the locks and Safeguard's conduct of entering and changing the locks and removing Plaintiff's personal property violates the unfairness prong of the ICFA, 815 ILCS 505/2.

53. Defendants had no right to enter and secure the property because Plaintiff had not abandoned his home, nor was it vacant.

54. Because Plaintiff was defending a foreclosure action, he had applied for loss mitigation, and there were no signs that the property was in disrepair or in need of emergency repairs or securing, he retained his rights to full possession of the property when Defendants locked him out, twice.

55. None of the criteria for performing interior inspections, according to the terms of the mortgage, were met prior to or during Defendants' lock-outs. Moreover, no accurate and reasonable cause to perform an interior inspection existed or was provided.

56. Even though Safeguard knew the property was occupied and should not have been entered in May of 2016, they entered the home and changed the locks again less than two months later when no substantial changes to the property had occurred and Plaintiff was still residing there. Any exterior inspection or drive-by would have revealed lights on in the evening, mail being delivered during the day, and the owner's parked car. There were no "For Sale" signs or other signs of vacancy.

57. When Plaintiff's home was entered, the mortgagee was not in possession under the Illinois Mortgage Foreclosure Law ("IMFL"). *See*, *e.g.*, 735 ILCS 5/15-1703; 735 ILCS 5/15-

1701(b)(1)-(2) and (c). Moreover, under Illinois law, the mortgagor (Plaintiff) had the presumptive right to possession.

58. In contravention of the IMFL, which mandates taking the legally required steps to gain possession of mortgaged properties, Defendants unlawfully attempted to take, and in fact did take, actions to take possession of the Plaintiff's home.

59. Rushmore employed Safeguard to effectuate Plaintiff's property lock-out and clean-out and either, (a) maintained inadequate controls to ensure property entries were appropriate, justified, and necessary, and/or (b) provided mis-information about the legal status of the property.

60. In turn, Safeguard maintained inadequate controls over its property "preservation" employees, agents or contractors and/or provided mis-information that guided Safeguard's agents' conduct.

61. Entering Plaintiff's property when it is evidently occupied, performing lock changes, and removing personal property violates public policy and is unfair, unconscionable, and oppressive when there is no indicia of abandonment and when Plaintiff is trying to save his home through loss mitigation efforts and foreclosure defense.

62. Defendants' conduct, described herein and above, is unfair, unconscionable, and oppressive in that Defendants knew or should have known that entry into an occupied home is likely to cause substantial distress and injury to homeowners like the Plaintiff. It is also conduct that is wrongfully designed to induce abandonment of property.

63. In fact, Defendants' conduct did cause substantial injury to Plaintiff. Plaintiff's home was left in disarray and valuable personal property was taken. However, there was no reason to enter the home in the first place as it was not in disrepair, had working utilities, and had not been abandoned. Plaintiff's missing property has not been returned.

64. Defendants' conduct, described herein and above, is unfair, unconscionable, and oppressive in that entering an occupied home without appropriate legal authority and taking action to bar re-entry through lock changes interferes with a homeowner's right of quite enjoyment.

65. Defendants' conduct, described herein and above, occurred in the course of trade or commerce in the State of Illinois and implicates consumer protection concerns as, (a) Rushmore engages in mortgage servicing activities and collects property "preservation" fees from homeowners like Plaintiff, and (b) Safeguard provides property "preservation" services on homes secured by mortgage loans.

66. On September 9, 2013, the People of the State of Illinois, by Lisa Madigan, Attorney General of the State of Illinois, brought an action for injunctive and other relief against Safeguard, charging it with unlawfully dispossessing Illinois homeowners and tenants, and often in the face of clear evidence that those homes remain legally occupied. The case was eventually settled, with Safeguard agreeing to modify its business practices to ensure that the company only secures a property that is vacant based on objective standards. Safeguard acted in contravention of those settlement promises here, and failed to appropriately monitor its agents, employees, and contractors, indicative of a broader pattern and practice of violative conduct.

WHEREFORE, Plaintiff asks that this Court enter judgment in his favor and against Defendants Rushmore Loan Management Services, LLC and Safeguard Properties Management, LLC and award damages as follows:

    (A)    Actual damages;

    (B)    Punitive damages;

    (C)    Reasonable attorney's fees, litigation expenses and costs incurred in bringing this action; and

    (D)    Any other relief this Court deems appropriate and just under the circumstances.

## **COUNT III**
### *Trespass*

67. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1-30 as if set forth fully in this Count.

68. Defendants did not have Plaintiff's express or implied permission or invitation to enter his property.

69. Plaintiff was in exclusive possession of his property and had not relinquished his right to exclusive possession and quiet enjoyment of the property.

70. Plaintiff did not abandon his property and never indicated he had given up his rights to the property or relinquished control over it.

71. To the contrary, Defendants should have known the Plaintiff had not given up his absolute right to exclusive possession prior to invading the property and locking the Plaintiff out because, amongst other things, his home was still filled with personal belongings, he had applied for loss mitigation options, and was defending the foreclosure. Confirmation of sale had been specifically delayed by the foreclosure court.

72. Defendants therefore knew that entering the property would result in an intrusion upon Plaintiff's possessory rights and personal sanctuary.

73. Defendants' employees, contractors or agents intentionally entered Plaintiff's home without legal authorization when Plaintiff's home was not abandoned or vacant and the foreclosure action was still pending. Further, none of the criteria for entry set forth in the mortgage were met.

74. Defendants used their employees, contractors or agents to take possession of Plaintiff's home prior to any judicial order granting it authority to do so.

75. Because Defendants' employees, contractors or agents had to break existing locks to gain access to the Plaintiff's home, the entry was neither peaceful nor prompted by any exigency.

76. Defendants knew or should have known that sending employees, contractors or

agents to break into Plaintiff's home would result in an illegal intrusion.

77. Defendants' conduct damaged Plaintiff. His doors and locks were damaged, he lost valuable personal property, his home was left in disarray, and his personal sanctity was violated.

WHEREFORE, Plaintiff asks that this Court enter judgment in his favor and against Defendants Rushmore Loan Management Services, LLC and Safeguard Properties Management, LLC and award damages as follows:

(A) Actual damages;

(B) Punitive damages;

(C) Any other relief this Court deems appropriate and just under the circumstances.

*Plaintiff Demands Trial By Jury*

Respectfully submitted,

By: /s/ Stacy M. Bardo
One of Plaintiff's Attorneys

Stacy M. Bardo
Bardo Law, P.C.
22 West Washington Street, Suite 1500
Chicago, Illinois 60602
Tel: (312) 219-6980
Fax: (312) 219-6981
E-mail: stacy@bardolawpc.com

Amir Mohabbat
The Chicagoland & Suburban Law Firm,
A Professional Corporation
248 South Marion Street, Suite 104
Oak Park, Illinois 60302
Tel: (815) 501-1345
Fax: (708) 386-9727
E-mail: amir@chicagolandlawfirm.com

Roger Zamparo, Jr.
Steven J. Uhrich
Zamparo Law Group, P.C.
2300 Barrington Road, Ste 140
Hoffman Estates, IL 60169
Tel: (224) 875-3202

13

Fax: (312) 276-4950
E-mail: Roger@Zamparolaw.com
E-mail: Steven@Zamparolaw.com

Edward Grossman
The Chicago Legal Clinic, Inc.
2938 E. 91st Street
Chicago, IL 60617
Tel: (773) 731-1762
Fax: (773) 731-4264
E-mail: EGrossman@clclaw.org

## DOCUMENT PRESERVATION DEMAND

      Plaintiff hereby demands that the Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff and the events described herein. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials.

                                              By: /s/ Stacy M. Bardo
                                                 One of Plaintiff's Attorneys