UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUBEN SIFUENTES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 17 C 3982 |
| ) | |
| RUSHMORE LOAN MANAGEMENT ) | Judge Rebecca R. Pallmeyer |
| SERVICES, LLC and SAFEGUARD ) | |
| PROPERTIES MANAGEMENT, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ruben Sifuentes is a Chicago homeowner who has been fighting a foreclosure of his home mortgage loan for years. In this lawsuit, Sifuentes challenges the conduct of a "property preservation" firm--Defendant Safeguard Properties Management, LLC ("Safeguard")--and the loan serving company, Defendant Rushmore Loan Management Services, LLC ("Rushmore"), who hired Safeguard. Plaintiff alleges that in 2016, he was engaged in efforts to obtain a loan modification, and an order confirming a judicial sale had not yet been entered. On two occasions, Plaintiff contends, Safeguard entered Plaintiff's home while he was away, changed the locks, and took Plaintiff's personal property. Plaintiff alleges that Defendants' conduct violates the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(6) (Count I) and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (Count II); and constitutes common law trespass (Count III). Defendants have moved to dismiss all three counts. For the reasons stated here, the motions are denied.

## BACKGROUND

According to the allegations of the complaint, deemed true for purposes of this motion, foreclosure proceedings were filed against Plaintiff in 2012. (Complaint [1]. ¶ 9.) He was still seeking refinancing in 2016, and obtained a court order staying the judicial sale on May 9, 2016.

(*Id.* ¶¶ 14-16.) On May 26, however, Plaintiff returned home from work to find the lock to his front door had been changed. (*Id.* ¶¶ 17-18.) Plaintiff was able to enter his home through the back door, which was left ajar; on entry, he found a notice from Safeguard, confirming that his lock had been changed, but acknowledging that Safeguard had "determined the property was occupied." (*Id.* ¶¶ 19-21.) Despite this purported determination, Plaintiff alleges, Safeguard's agents had left his home "in a state of disarray." (*Id.* ¶ 22.) Drawers and cabinets were "opened and picked through," and several items of personal property had been taken, including cuff links, business suits, jewelry, patio furniture, and "a small fire pit." (*Id.*) Plaintiff reported the incident to police, and his attorney contacted Rushmore's attorney to confirm that Plaintiff continued to live in his home. (*Id.* ¶ 23.)

The stay of the foreclosure proceedings was continued to August 4, 2016. (*Id.* ¶ 24.) But on July 7, Safeguard entered Plaintiff's home a second time, again changed the front door lock, and this time installed a lockbox. (*Id.* ¶¶ 25, 26.) Plaintiff again contacted his attorney, who obtained the lockbox code from Rushmore's counsel. (*Id.* ¶ 28.) When he entered the home, Plaintiff found that more items were missing, "including a winter jacket and a chainsaw," and that his "bedroom was in disarray." (*Id.*) And it appeared that the back door had been "pried open with a crowbar." (*Id.* ¶ 27.) These allegations, Plaintiff alleges, support his claims under the FDCPA, the Illinois Consumer Fraud Act, and the law of trespass.

## **ANALYSIS**

Defendants have moved to dismiss all three counts. Defendant Safeguard contends that its activities involve "property preservation," not debt collection, and are not actionable under FDCPA. (Safeguard's Memorandum [20], at 6-7.) If the court dismisses that claim, Safeguard urges, it should relinquish jurisdiction over Plaintiff's state law claims. (*Id.* at 10.) On the merits of the Consumer Fraud Act claim, Safeguard contends its property preservation activities are authorized under the mortgage loan agreement, and are therefore not fraudulent. (*Id.* at 10-12.) Defendant Rushmore echoes Safeguard's argument that "securing property is not debt

collection" (Rushmore's Memorandum [22], at 4), and that the Consumer Fraud Act claim fails because Plaintiff has not identified any "deceptive or unfair act or practice" on the part of Defendants. Rushmore itself is not liable for any of Safeguard's activities, Rushmore urges. (*Id.* at 2-3.) Neither Defendant has addressed the substance of the trespass allegations.

I.      **Defendants' Conduct is Actionable under FDCPA**

Plaintiff Sifuentes is a citizen and resident of Illinois; both Defendants are LLCs organized in Delaware and maintain principal places of business outside Illinois. Unless the LLCs' members include Illinois citizens, the parties are diverse in citizenship. But Plaintiff has not suggested that $75,000 is at stake, and all parties assume that the court's jurisdiction rests on Plaintiff's FDPCA claim, so the court begins its analysis there.

In response to what it called "abundant evidence" of "abusive, deceptive, and unfair debt collection practices by many debt collectors," Congress passed the FDCPA in 1977. The Act regulates the conduct of debt collectors, defined as "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Among other things, the Act forbids various types of "false, deceptive, or misleading" representations or means to collect a debt, 15 U.S.C. § 1692e, as well as those that are "unfair or unconscionable." 15 U.S.C. § 1692f. The Act specifically prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Under 15 U.S.C. § 1692f(6), it is an "unfair or unconscionable" practice, in violation of the FDCPA, for anyone who does not have a present right to possession of the property to take or threaten "nonjudicial action to effect dispossession or disablement of property."

Safeguard contends it is not a debt collector for purposes of the FDCPA, but section 1692a(6) expands the definition of "debt collector" for purposes of liability under section 1692f(6); for purposes of that subsection, a debt collector "also includes any person" engaged in interstate commerce "in any business the principal purpose of which is the enforcement of

security interests." *Id.* § 1692a(6).  Plaintiff Sifuentes explicitly alleges that Safeguard's "principal purpose is the enforcement of security interests." (Compl. ¶ 35.) Safeguard clings to *Hunte v. Safeguard Properties Management LLC,* No. 16 C 11198, 2017 WL 2445137 (N.D. Ill. June 6, 2017), where Judge Feinerman of this court granted a motion to dismiss plaintiff's FDCPA claim. In reaching that conclusion, the court noted that the plaintiff there had identified "enforcement of security interest" as Safeguard's "principal purpose," but contradicted himself by also alleging that Safeguard's "principal purpose" was managing and preserving foreclosed properties. 2017 WL 2445137, *2. No such contradiction appears in the complaint in this case. As the *Hunte* court observed, *id.*, where plaintiff alleges that Safeguard's principal purpose is enforcement of a security interest, those allegations are sufficient to render Safeguard liable as a debt collector, at the pleading stage.

Numerous courts in this district have so concluded.  In *Bywater v. Wells Fargo Bank, N.A.*, No. 13 C 4415, 2014 WL 1256103 (N.D. Ill. Mar. 24, 2014) the agent for a company that provides "home preservation services" was alleged to have forcibly entered plaintiff's home, "changed the locks, and damaged or stole many of [plaintiff's] personal items, including jewelry, electronics, and appliances." 2014 WL 1256103 *1. The court had no trouble concluding that defendants' business of "securing properties" brought them within the definition of "debt collector" set forth in s 1692a(6). *Id.* *5. The *Bywater* court also concluded that the invasive activity described in the complaint—similar to what Sifuentes alleges here--is prohibited by § 1692f(6). *Id.* See also *Matthews v. Homecoming Fin. Network*, No. 03 C 3115, 2005 WL 2387688, *1 (N.D. Ill. Sept. 26, 2005) (allegations that defendants "forcibly entered [plaintiff's] house [before having right to possession], removed his personal property, and changed the locks" alleged violations of FDCPA § 1692a(6); *Frazier v. US Bank Nat'l Ass'n*, No. 11 C 8775, 2013 WL 1337263, *10 (N.D. Ill. Mar. 29, 2013) ("Following *Nadalin [v. Auto. Recovery Bureau. Inc.,* 169 F.3d 1084 (7th Cir. 1999], courts in this District have recognized that a plaintiff may state a § 1692f(6) claim in the personal property repossession context when the plaintiff alleges

4

that '[the defendant] was enforcing a security interest and did not have a present right to possess the collateral.'"); *Hill v. Wells Fargo Bank, N.A.*, No. 12 C 7240, 2015 WL 232127, *5 (N.D. Ill. Jan. 16, 2015) (denying motion to dismiss FDCPA claim brought by homeowners who "repeatedly informed [defendant 'preservation services' firm] that their home was occupied and yet still face break-in attempts"); *Federal National Mortgage Assoc. v. Obradovich*, No. 14 C 4664, 2016 WL 1213920 (N.D. Ill. Mar. 29, 2016) (denying motion to dismiss FDCPA claim against Safeguard for entering and damaging mortgage borrower's home); *Flippin v. Aurora Bank, FSB*, No. 12 C 1996, 2012 WL 3260449 *2 (N.D. Ill. Aug. 8, 2012) (allegations that defendant, at bank's direction, "changed the locks on the house and 'winterized' it by turning off the water supply and disconnecting the hot water heater" stated a violation of FDCPA); *compare Alqaq v. CitiMortgage, Inc.*, No. 13 C 5130, 2014 WL 1689685, at *3-4 (N.D. Ill. Apr. 28, 2014) (actions taken by Safeguard after foreclosure proceedings were completed were incidental to debt collection and therefore insufficient to constitute "enforcement of a security interest" as required by section 1692f(6).)

Apart from *Alqaq,* which involved foreclosure activity, Safeguard makes no mention of any of this authority. Instead, Safeguard devotes substantial attention in its memorandum to the salutary nature of property preservation services. (Safeguard Memorandum [20], at 2-8.) The court has no doubt that neighborhoods benefit when vacant and abandoned properties are maintained and properly secured. Plaintiff here alleges, however, that his own property was neither vacant nor abandoned when Safeguard entered it, changed the locks, and seized certain of Plaintiff's personal items. The court agrees with its colleagues that attempting to enforce a mortgage security interest by way of locking a borrower out of his property is conduct prohibited by § 1692f(6) of the FDCPA.

Defendant Rushmore's challenge to Count I requires less analysis. Rushmore alleges that Plaintiff has not sufficiently alleged any conduct on its part. As the court reads the complaint, however, it is apparent that Plaintiff alleges Safeguard was acting as Rushmore's

5

agent. Plaintiff alleges that "Rushmore used Safeguard to lock Plaintiff out of his home." (Compl., at 1; ¶ 59.) Rushmore "utilized Safeguard's property services" for Plaintiff's home "on multiple occasions," and added a charge for these services to Plaintiff's mortgage obligation. (*Id.* ¶¶ 6, 39.) Plaintiff's attorney contacted Rushmore's counsel for relief after the first break0in, and when Plaintiff was locked out a second time, it was Rushmore's attorney who provided a code to the lockbox that Safeguard had installed. (*Id.* ¶¶ 23, 28.) To allege that an agency relationship exists, a plaintiff need only "allege a factual predicate to create the inference of agency." *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp.2d 885, 895 (N.D. Ill. 2009); *Sefton v. Toyota Motor Sales U.S.*A., No. 09 C 3787, 2010 WL 1506709, at *3 (N.D. Ill. Apr. 14, 2010). In *Jackson v. Bank of New York*, No. 11 C 6410, 2012 WL 2503956, *1 (N.D. Ill. June 28, 2012), plaintiff alleged that on behalf of the mortgage loan servicer, Safeguard had "changed the locks, winterized [plaintiff's] house and removed [her] personal property, all without prior notice or judicial authorization." Those allegations, the court concluded, provided a sufficient factual predicate that Safeguard acted on behalf of the lender and the loan servicer. *Id.* *2. Discovery may show that Rushmore had no knowledge of Safeguard's activities and would not have authorized them.[1] At this stage, however, Plaintiff's allegations are adequate to state a claim that Rushmore is liable for Safeguard's activities as its principal.

Both Defendants' motions to dismiss Count I are denied.

## II. Consumer Fraud Act Claims Survive this Motion

Having concluded that Plaintiffs have adequately alleged an FDCPA claim, the court turns to state law claims over which it exercises supplemental jurisdiction. The Illinois Consumer Fraud Act is "a regulatory and remedial statute intended to protect consumers,

---

[1] Plaintiff alleges that Illinois Attorney General Lisa Madigan sued Safeguard in 2013, seeking injunctive relief for its practice of unlawfully dispossessing Illinois residents who were legal occupants of their homes. (Compl. ¶ 66.) Rushmore's knowledge of this legal proceeding could have put Rushmore on notice of Safeguard's conduct. Safeguard asks the court to strike the allegations (Safeguard Memorandum [20], ¶¶ 45-48), but offers no authority for its assertion that the suit and resulting consent judgment are inadmissible. The court declines to strike the allegation.

borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 830 (7th Cir. 2014) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416–17, 775 N.E.2d 951, 960 (2002)). The statute provides redress for deceptive business practices and also for business practices that, while not deceptive, are unfair. *See ibid.; Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574–75 (7th Cir.2012). "The Act is 'liberally construed to effectuate its purpose.' " *Wigod*, 673 F.3d at 574 (quoting *Robinson*, 201 Ill. 2d at 417, 775 N.E.2d at 960). A plaintiff may sue under the ICFA for deceptive conduct or for unfair conduct. While an allegation of deceptive conduct triggers the heightened pleading standard of FED. R. CIV. P. 9(b), "a cause of action for unfair practices under the [Illinois] Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,* 536 F.3d 663, 670 (7th Cir.2008).

Plaintiff Sifuentes's allegations of a Consumer Fraud Act violation are thin, but the court concludes he has met this minimal pleading standard. Here, as in similar cases, plaintiff alleges "an unfair act—self-help to take possession of mortgaged property outside the judicial process mandated by state law." *Bywater*, 2014 WL 1256103, *4. Such an unfair act, the court held, violates the Consumer Fraud Act; the court declined to decide whether plaintiff's allegations also established an ICFA deceptive practices claim. *See also Flippin*, 2012 WL 3260449 * 3 ("Plaintiffs' allegations that defendants locked her out of her house and took her property without a legal or factual basis for doing so adequately state an ICFA claim."); *Boyd v. U.S. Bank, N*.A., 787 F.Supp.2d 747, 755–57 (N.D. Ill. 2011) (allegations that defendants broke into and padlocked plaintiff's home "dispossessing him of his property, without notice or court approval" were sufficient to withstand motion to dismiss ICFA claim).

Defendants again make no mention of these precedents. Defendant Safeguard cites *Schweihs v. Chase Home Finance, LLC,* 2016 IL 120041, 77 N.E.3d 450 (2016), where plaintiff alleged infliction of emotional distress on the part of a property preservation service hired by

7

defendant lender. (Safeguard Memorandum, at 10-11.) Before entering the property to make repairs, as permitted by the mortgage loan agreement, the preservation service's agent had knocked on the plaintiff's door, talked with his neighbors, and determined that the gas was turned off and debris and garbage littered the interior. 2016 IL 120041 ¶¶ 8-11. In affirming dismissal of plaintiff's tort claims, the Illinois Supreme Court made no mention of the Consumer Fraud Act. Rushmore's memorandum cites case law concerning deceptive, rather than unfair, practices, and urges that nothing about the circumstances suggests deception: After Sifuentes was locked out of his home a second time, Rushmore points out, "he was restored to possession when the lockbox code was forwarded to him." (Rushmore Memorandum [22], at 6.) Rushmore believes these circumstances defeat the conclusion that Defendants intended to keep Plaintiff out of his home, but a reasonable jury could conclude otherwise. The motions to dismiss this count are denied.

### III. Trespass Claims are Unchallenged

Neither Defendant has challenged Plaintiff's trespass allegations and, as his federal claim survives this motion, his state tort claim does, as well.

### CONCLUSION

Defendants' motions to dismiss [19, 21] are denied. Defendants are directed to answer the complaint within 21 days. A Rule 16 conference is set for May 9, 2018 at 9:00 a.m.

ENTER:

Dated: March 26, 2018

_____
REBECCA R. PALLMEYER
United States District Judge